UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HERSON OMAR BARRERA-VASQUEZ,

            Petitioner,

       v.

UNITED STATES OF AMERICA,

            Respondent.

**MEMORANDUM & ORDER**

10 Civ. 5122 (LBS)
08 Cr. 1127 (LBS)

---

SAND, J.

Petitioner Herson Omar Barrera-Vasquez, appearing *pro se*, filed the instant petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner was found guilty after a jury trial in this Court of one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He now raises two grounds for relief. First, he claims that his deportation proceedings violated his rights of due process. Second, he claims ineffective assistance of immigration and trial counsel.

For the reasons set forth below, the petition is denied in its entirety.

**I.  Background**

The following facts are not in dispute. Petitioner is a citizen of El Salvador, and has never been a citizen of the United States of America. In May 1995 he was convicted of criminal sale of a controlled substance in the fifth degree in the Criminal Court of Nassau County, New York, and sentenced to between two and four years imprisonment. This conviction triggered removal proceedings by the United States Immigration and

1

Naturalization Service,[1] which issued an Order to Show Cause and Notice of Hearing to Petitioner on February 20, 1997. The Order to Show Cause advised Petitioner:

> If you fail to appear at any hearing after having been given written notice of the date, time and location of your hearing, you will be ordered deported in your absence . . . If you are ordered deported in your absence, you cannot seek to have that order rescinded except that (a) you may file a motion to reopen the hearing . . . if you are able to show that your failure to appear was because of exceptional circumstances, or (b) . . . if you can show that you did not receive written notice of your hearing . . . If you choose to seek judicial review of a deportation order entered in your absence, you may file a petition for review within 60 days (30 days if you are convicted of an aggravated felony) . . . .

Order to Show Cause & Notice of Hr'g, Feb. 20, 1997, Gov't Opp. Mem. Ex. B, at 4. On or about July 20, 2001, Petitioner was served with a Notice to Appear at a removal hearing, Gov't Opp. Mem. Ex. C, and on February 7, 2002, he was granted bail to attend the hearing, scheduled for August 2003. On November 27, 2002, Petitioner was arrested on a charge of petit larceny in Nassau County, and pled guilty on June 27, 2003, but failed to report to prison. A bench warrant was issued by the Nassau County Criminal Court on July 2, 2003.

Petitioner's removal hearing was held on August 12, 2003. Petitioner did not appear; his immigration counsel advised the Immigration Judge that Petitioner had been recently arrested, convicted, and sentenced on a petit larceny charge, failed to report to prison, and could not be located. The Immigration Judge held that Petitioner had been

---

[1] In 2003 the INS was reorganized into three agencies within the Department of Homeland Security; the functions discussed here are now performed by United States Citizenship and Immigration Services.

2

provided with appropriate notice of the hearing, and ordered his removal *in absentia.* A warrant for his removal was issued on August 12, 2003. Petitioner did not seek administrative review of the removal order and remained a fugitive until June 29, 2007, when he was arrested on drug and forgery charges in Nassau County. He was released by New York State to United States Immigration and Customs Enforcement ("ICE") custody in January 2008 and was deported to El Salvador in March 2008.

In November 2008, Petitioner was arrested by ICE agents in Hempstead, New York. On November 17, 2008, an indictment was filed in this Court charging him with one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Petitioner pleaded guilty on February 3, 2009, and on June 3, 2009, this Court sentenced him to 77 months imprisonment. Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit. His trial counsel moved for permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the grounds that there were no non-frivolous issues on appeal. On July 14, 2010, the Second Circuit affirmed Petitioner's conviction and sentence by summary order and granted trial counsel's motion to withdraw. Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 on May 10, 2010.

## II. Analysis

### a. Procedural Default

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted).

3

While Petitioner fails to specify why his petition was not procedurally defaulted, he does not allege actual innocence, so he is left with the cause and actual prejudice standard. "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) cause excusing his double procedural default, and (2) actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167 (1982) (internal quotation marks omitted). "In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). Such factors include official interference, "a showing that the factual or legal basis of a claim was not reasonably available to counsel," or constitutionally ineffective assistance of counsel—though attorney error short of this standard "does not constitute cause and will not excuse a procedural default." *Id.* at 493–94 (internal quotation marks and citations omitted).

The Government argues that Petitioner's two claims—of due process violations and ineffective assistance of counsel—are procedurally defaulted because he did not raise them in the underlying case adjudicated by this Court, or on direct appeal to the Second Circuit. However, the Supreme Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Petitioner's claim of ineffective assistance of counsel relies solely on his immigration and trial counsel's failure to raise his due process claim. While the Government is correct that "the consequences of the procedural default doctrine cannot

4

be avoided simply by making each and every procedural default the predicate for a claim of ineffective assistance of counsel," *Hamilton v. Hood*, 806 F. Supp. 429, 434 n.4 (S.D.N.Y. 1992), evaluation of counsel's performance in this case requires an inquiry into the merits of Petitioner's arguments.

Therefore, this Court will first consider the merits of his substantive allegation of a due process violation, before addressing his ineffective assistance of counsel claim.

### b. Due Process Claim

Petitioner asserts that the 2003 removal proceedings violated his due process rights under the Fifth Amendment and 8 U.S.C. § 1326. The latter provides that an alien may not collaterally attack a deportation order underlying an illegal reentry conviction "unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Petitioner claims that he was deprived of the opportunity for judicial review of his removal order because the Immigration Judge incorrectly declared that he had no right to appeal. He further contends that the removal order was "fundamentally unfair" because it was predicated on his 2003 larceny conviction rather than the original 1995 drug conviction, and that he would have been granted a stay of removal based on the 1995 conviction. These claims are meritless.

First, the Immigration Judge correctly stated that Petitioner had no right to a direct appeal of his removal order. Petitioner claims that 8 C.F.R. § 1003.3(a), promulgated by the Executive Office of Immigration Review ("EOIR"), required the Immigration Judge

to give him notice of an opportunity to appeal.  However, the regulation actually reads as follows: "A party affected by a decision of an immigration judge *which may be appealed to the Board under this chapter* shall be given notice of the opportunity for filing an appeal."  8 C.F.R. § 1003.3(a)(1) (emphasis added).   Regarding the question of which decisions may be appealed, Petitioner ignores 8 U.S.C. § 1229a(b)(5)(c), as amended in 1991, which provides that *in absentia* removal orders may only be rescinded by a motion to reopen the proceedings, not a direct appeal.  Moreover, in a case governing Petitioner's removal proceeding pursuant to his 1995 arrest, the BIA held that it is "without authority to consider" a direct appeal from an *in absentia* order.  *Matter of Gonzalez-Lopez*, 20 I. & N. Dec. 644, 645 (B.I.A. 1993).  Petitioner also ignores further regulations from EOIR stating that "Pursuant to 8 C.F.R. part 1003, an appeal shall lie from a decision of an immigration judge to the Board of Immigration Appeals ("BIA"), *except that no appeal shall lie from an order of removal entered in absentia*."  8 C.F.R. § 1240.15 (1997) (emphasis added).   Because of his failure to appear, Petitioner did not have a right to appeal the removal order.  Therefore, Petitioner cannot claim that the Immigration Judge somehow violated 8 U.S.C. § 1326(d)(2) by making a correct statement of the applicable law.  Petitioner repeatedly cites the fact that his lawyer was present at the hearing, but the applicable regulations and cases cited *supra* clearly state that the alien himself must be present at a removal hearing; representation of counsel is not a sufficient substitute.[2]

---

[2] None of the cases Petitioner cites on the appealability of removal orders is on point.  Virtually all of them involved removal or deportation hearings where the alien was present.  Those upholding ineffective assistance of counsel claims involved an attorney's failure to file motions for relief despite requests from the alien or the immigration judge.  *See, e,g.*, *United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006); *United States v. Scott*, 394 F.3d 111 (2d Cir. 2005); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004) ; *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004); *United States v. Perez*, 330 F.3d 97 (2d Cir. 2003); *United States v. Gonzalez-Roque*, 301 F.3d 39 (2d Cir. 2002).  Finally, many of these cases are from jurisdictions other than the Second Circuit, and are therefore not binding on this Court.

Second, 8 U.S.C. § 1326(d)(1) requires that an alien exhaust his administrative remedies before seeking an appeal of a removal order. *See also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right . . . ."). Again, Petitioner ignores the express provisions of 8 U.S.C. § 1229a(b)(5)(c), which states that a removal order *in absentia* "may be rescinded only upon a motion to reopen" filed with the Immigration Judge either (1) within 180 days after the date of the order, if the alien demonstrates that he failed to appear because of exceptional circumstances, or (2) at any time if the alien demonstrates that he did not receive appropriate notice of the hearing, or was in federal or state custody and could not appear through no fault of his own. Petitioner cannot claim that he did not have notice of this post-hearing remedy or the consequences of a failure to appear, because these issues are explicitly discussed in the Order to Show Cause and Notice of Hearing issued on February 20, 1997.[3] Gov't Opp. Mem. Ex. B at 4. Despite having this notice, Petitioner never filed the requisite motion to reopen and has not offered any evidence showing either exceptional circumstances[4] justifying his failure to appear or incarceration at the time of the hearing. Therefore, Petitioner failed to meet the exhaustion requirement of 8 U.S.C. § 1326(d)(1). Petitioner's argument that this Court should deem him as having met the exhaustion requirement, *see* Pet. Mem. at 6 n.1, rehashes his mistaken contention that the Immigration Judge failed to inform him of his

---

[3] Petitioner claims that he did not receive written notice of the consequences of a failure to appear, because it was not contained in the Notice to Appear, Gov't Opp. Mem. Ex. C. However, Petitioner never acknowledges the fact that the Order to Show Cause and Notice of Hearing contains such language and does not claim that he never received the Order. The Order notes that an alien can seek judicial review of a final removal order *in absentia*, but only after he has filed a motion to reopen the removal hearing and the Immigration Judge has denied the motion or entered a removal order. Gov't Opp. Mem. Ex. B at 4.

[4] Such "exceptional circumstances" are limited to "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances," and they must be "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

right to appeal—a right that, as discussed *supra*, did not exist because of his failure to appear—and does not address his failure to file a motion to reopen the removal hearing.[5]

Third, Petitioner offers no evidence to support his argument that the removal order was "fundamentally unfair" under 8 U.S.C. § 1326(d)(3). His claim that the Immigration Judge improperly based his removal on the 2003 larceny conviction contradicts the record. The Notice to Appear listed only the 1995 drug conviction in its allegations against Petitioner. Gov't Opp. Mem. Ex. C at 3. At the removal hearing, in discussing the charge of deportability, the Immigration Judge only relied upon the 1995 drug conviction. Audio Recording of Aug. 12, 2003 Hearing, Gov't Opp. Mem. Ex. D at 2:45–3:17. Moreover, Petitioner offers no evidence for his claim that he would have been granted a stay of removal based on his 1995 drug conviction, and under law applicable at the time of that conviction, he would not have been eligible for a stay.[6]

Finally, Petitioner's invocation of due process rights under the Fifth Amendment is unavailing. He "cannot obtain review of procedural errors in the administrative

---

[5] Petitioner cannot file a motion to reopen the hearing at this point, since the 180-day period for filing, 8 U.S.C. § 1229a(b)(5)(c)(i), has long since passed due entirely to his own decision to remain a fugitive.

[6] Petitioner claims that he would have been eligible for potential relief under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (1994), which permitted discretionary waiver of deportation for aliens convicted of an "aggravated felony," and argues that the Immigration Judge failed to advise him of this supposed eligibility. Section 212(c) was repealed by § 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009–597, which went into effect in April 1997. In *INS v. St. Cyr*, the Supreme Court held that § 304 of IIRIRA is not retroactive, and therefore "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. 289, 326 (2001). Because he entered his guilty plea on the drug charge before April 1997, Petitioner would have been eligible for relief under § 212(c) had he appeared at his removal hearing. However, because he did not appear, he was not eligible. *See* 8 C.F.R. § 212.3(f)(5) (1995) (barring § 212(c) relief within five years of an act enumerated in INA § 242B(e)(1)–(4)); INA § 242B(e)(1), codified at 8 U.S.C. § 1252b(e)(1) (1994) (repealed 1997) (barring relief for alien "against whom a final order of deportation is entered in absentia"; applicable to Petitioner per *INS v St Cyr*.). Finally, Petitioner has made no showing that he would have been eligible for section 212(c) relief on the merits. He has made no claims regarding the relevant factors of family ties, years of residency, hardship upon deportation, military service, employment history, community service, property or business ties, good character, or rehabilitation after criminal offenses. *See Lovell v. INS*, 52 F.3d 458, 461 (2d Cir. 1995) (listing factors for § 212(c) relief).

process that were not raised before the agency merely by alleging that every such error violates due process.  'Due process' is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal." *United States v. Gonzalez-Roque*, 301 F.3d at 48 (quoting *Vargas v. U.S. Dep't of Immigration*, 831 F.2d 906, 908 (9th Cir. 1987) (citation and internal quotation marks omitted)). Petitioner's failure to file a motion to reopen his removal proceeding, and thus exhaust his administrative remedies, ensures that his claims cannot survive collateral review.

Accordingly, Petitioner has failed to establish that his deportation or his conviction for illegal reentry violated his due process rights under the Fifth Amendment and 8 U.S.C. § 1326.

### c.  Ineffective Assistance of Counsel Claim

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two part test to determine whether or not counsel's assistance is ineffective.  First, Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  To establish that counsel was ineffective, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687–88. Second, the defendant must show that the deficient performance prejudiced the defense, which requires that petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*  If Petitioner cannot establish both *Strickland* prongs, his claim fails.  "There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also Cousart v. Hammock*, 745 F.2d 776, 778 (2d Cir. 1984).

Petitioner's ineffective assistance of counsel claims repeat his allegations on the merits.  First, he argues that the Immigration Judge's statement that he had no right to appeal the removal order *in absentia* affected his counsel's ability to file such an appeal.  Although this argument faults the Immigration Judge rather than counsel, the Court will construe the argument in the manner most favorable to Petitioner, as asserting that his immigration counsel should have filed the appropriate appeal notwithstanding the Immigration Judge's statement.  However, as discussed *supra*, the Immigration Judge's statement of the law was correct; Petitioner did not have a right to appeal his *in absentia* removal order.  Therefore, counsel's response was in accordance with the applicable law and in no way constituted constitutionally ineffective assistance.

Second, Petitioner alleges that on the illegal reentry charge before this Court, his criminal trial counsel did not review the Notice to Appear to determine whether it gave sufficient notice that failure to appear would foreclose Petitioner's right to appeal the removal order.  Again, as discussed *supra*, Petitioner did receive such notice through the Order to Show Cause and Notice of Hearing, Gov't Opp. Mem. Ex. B.  Petitioner's trial counsel would not have had grounds to claim insufficient notice, and therefore trial counsel's decision not to raise this argument does not constitute ineffective assistance.

Third, Petitioner repeats his claim that the Immigration Judge improperly based his removal upon the 2008 larceny conviction, and contends that his immigration counsel had an obligation to appeal this ruling.  As discussed *supra*, this claim contradicts the

10

record; the Immigration Judge based her determination solely upon the 1995 drug charge. Counsel had no basis for appealing the Immigration Judge's ruling.

As counsel stated at the removal hearing, Petitioner made no effort to contact his immigration counsel and did not advise her of his whereabouts, and his family stated that Petitioner was nowhere to be found. Audio Recording of Aug. 12, 2003 Hearing, Gov't Opp. Mem. Ex. D, at 00:46–00:56. Counsel attempted to find Petitioner, to no avail. *Id.* at 00:58–01:24. No evidence on the record indicates that Petitioner made any effort to communicate with counsel, and he remained a fugitive until his arrest on a new charge in June 2007. Petitioner's failure to seek the appropriate administrative relief for his removal order *in absentia* was a result of his own decision to remain a fugitive, not of any supposed ineffectiveness of his immigration counsel.

Accordingly, Petitioner has failed to establish ineffective assistance of counsel in violation of the Sixth Amendment.

### III. Conclusion

Petitioner's motion to vacate, set aside, or correct his sentence is denied. The Clerk of Court is directed to close this case. Petitioner has failed to make any substantial showing of a denial of a constitutional right; accordingly, the Court declines to issue a Certificate of Appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 342–43, 347 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED.

Dated: February 1, 2011
New York, NY

*[signature]*
U.S.D.J.

11